[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a contested action for dissolution brought by the Plaintiff wife, against the Defendant husband, on the grounds of irretrievable breakdown.
The Plaintiff and Defendant were intermarried in West Springfield, Massachusetts, on March 2, 1985. There are no minor children issue of this marriage.
From the credible evidence proffered at trial, the Court finds the following chronology of events:
For approximately one year following their marriage the parties resided in Connecticut and the Plaintiff continued with employment with Women's Specialty Retailing as she had CT Page 11194 prior to the marriage. Defendant was a salesman of large commercial trucks. On or about April 1986 the couple moved to Florida where the Defendant held two different positions as a truck salesman. The couple returned to Connecticut in July of 1987 and purchased a home in Suffield, Connecticut.
Approximately one year later, in September of 1988, Plaintiff met with her three daughters from a previous marriage and their families concerning a proposal discussed earlier between Plaintiff and Defendant about the possibility of selling their principal residence and moving to a summer home in Old Lyme, Connecticut, the title to which was held by the Plaintiff. This home had been purchased by her Grandparents who had conveyed a one-half interest to her prior to the marriage. On or about the time of the marriage her Grandmother conveyed the remaining half to the Plaintiff. During the course of the marriage this property was used during the summer as a vacation home by the Plaintiff's three daughters and their families as well as the Plaintiff and the Defendant. The real estate tax and utilities were shared among all of these families; there is no mortgage on the property. On or about the time of the marriage in 1985 Plaintiff's will reflected that her daughters, rather than the Defendant, would inherit the cottage in the event of her death. Defendant was fully aware of that provision. Defendant did, in fact, help maintain and repair the cottage as well as enjoy its use over the years of the marriage.
On or about April of 1991 Defendant became unemployed. During the following months the relationship deteriorated. Defendant became verbally abusive and, on occasion, drank to excess. This led to an incident in July of 1992 when Plaintiff called the police because Defendant was attempting to knock down the bedroom door. This occurred on or about the time this action was commenced by the Plaintiff. Because of Defendant's verbal abuse and his drinking, Plaintiff found it extremely difficult to continue to live in the marital home. On advice of her doctor (See Plaintiff's Exhibit A) she vacated the marital residence on September 23, 1992.
Although it appears from Plaintiff's testimony that Defendant's actions were the sole cause of the breakdown of the marriage, Plaintiff did admit on cross examination that in January of 1977 she accused Defendant of giving her herpes. This was later shown not to be the case after Plaintiff had CT Page 11195 seen a number of gynecologists with the Defendant, all of whom indicated that the Plaintiff did not contract herpes from the Defendant. The last of these doctors suggested to the Plaintiff that perhaps she needed some psychological counseling.
On or about September 1992 shortly after Plaintiff vacated the property she learned that her husband had prostate cancer. Neither at the time of the filing of this action, nor at the time she vacated the premises, did this condition have any influence on either event.
Just prior to her vacation of the marital residence, Plaintiff learned that Defendant had withdrawn $2,896.99 from a joint account. (See Plaintiff's Exhibit B) Although Defendant testified that a portion of the funds were monies which he received from unemployment compensation, the figures to which he testified do not comport with Plaintiff's Exhibit B. The Court finds the Plaintiff's testimony as more credible regarding this issue.
Plaintiff further testified that on November 3, 1993, Defendant was ordered to reimburse her $10.00 per week for her retention of Defendant on her insurance policy. He made no payments to her yet was retained on that policy through March 1994. Therefore, he owes Plaintiff for 22 weeks with respect to that order. Further, on March 15, 1993, Defendant was ordered to pay one half of the homeowner's premium on the marital residence, $207.45, which was ordered to be deducted from the proceeds of sale of the marital residence.
Plaintiff had a great deal of difficulty getting Defendant to cooperate regarding the sale of the marital residence. She finally entered into an agreement with him to pay him $1,000 over and above his equitable share of the proceeds simply in order to get him to sign the sales contract. The residence took over three years to sell, much of the delay caused by the Defendant. During the time Defendant resided in the marital residence from October 1992 to July of 1993, Plaintiff paid $216 in excess of Defendant's payment on the mortgage of that home for a period of ten months.
Plaintiff further testified that she was seeking certain items of personal property in accordance with her motion dated CT Page 11196 March 15, 1993. Said property was ordered to be placed in storage until final resolution of this matter. Additionally, Plaintiff submitted Exhibit C which lists with specificity those Christmas decorations which she wishes to be returned to her.
Both parties agree that there has been an increase in value of the Old Lyme property from 1985 to 1993 in the amount of $42,000. The preponderance of the evidence shows that, although on its face this appears to be a marital asset which should be equally divided, it was understood among the family that this summer residence was to be used by all members equally and, in fact, the Plaintiff's daughters' families shared in the expenses and maintenance of that property. The Defendant did testify to certain repairs which he made to the cottage, sometimes with the help of William Lacey, the Plaintiff's son-in-law, and sometimes by himself. He also stated that he contributed toward the payment of utilities and the taxes of that cottage. None of this testimony was in conflict with that of the Plaintiff or of William Lacey, but rather, appears to support the arrangement set forth in Plaintiff's testimony. Of course, Defendant's claim is that he did much more of the maintenance and paid much more of his share of the utilities than claimed by the Plaintiff. It would seem from all of the facts in this case that Defendant should retain less than fifty percent of the increase in value of the South Lyme property but more than one half of an equal percentage assigned to each of the families in question. It would appear that, equitably, Defendant should receive 25 per cent of the increase in value of the 35 Short Acres Road property, i.e. $10,500.
In arriving at financial orders in this case, the Court has considered all of the criteria contained in Sections 46b 61, 46b 81, 46b 82, 46b 84 of the Connecticut General Statutes.
Accordingly, dissolution of the marriage shall enter on the grounds of irretrievable breakdown in the following orders shall enter:
1. The parties shall share equally in the proceeds from the sale of the marital home, which proceeds are being presently held in escrow, after a lump sum payment of $1,000 is made to the Defendant, which sum represents a prior agreement between CT Page 11197 the parties.
2. Defendant is awarded 25 percent of the increase in value of the 35 Shore Acres Road, South Lyme, Connecticut property, i.e. $10,500. From that amount should be deducted the following items:
 (1) $2,160, which sum represents that portion of mortgage payments paid by the Plaintiff for the benefit of the Defendant;
 (2) $207, which sum represents that portion of the homeowner's insurance premiums paid by the Plaintiff for the benefit of the Defendant;
 (3) $220, which sum represents that portion of Defendant's medical insurance premiums which the Defendant refused to pay;
 (4) $1,393.50, which sum represents one half of the unilateral withdrawal from the parties joint checking account by the Defendant on June 16, 1992.
Those four sums total $3,980.50, leaving a sum of $6,519.50, which sum shall be paid to the Defendant within sixty days of this judgment period.
3. Neither party shall receive periodic alimony.
4. The parties shall equally divide the United States savings bonds currently valued at $15,962.40.
5. Defendant shall be entitled to 25 per cent of Plaintiff's profit sharing plan which shall be payable to the Defendant within thirty days of Plaintiff's receipt of said funds on or about June 1995.
6. The Plaintiff shall be entitled to the following Christmas items:
1. Hand made tree top angel
2. Nativity Scene
3. Christmas Carol Village CT Page 11198
4. Antiqued St. Nicholas Figure
5. Pair of Christmas Carolers
6. Glass Angel
7. Christmas Carousel Horse
8. Miscellaneous small tree ornaments
9. Electric Window Candles
7. The Defendant shall return to the Plaintiff within thirty days of this judgment items of personal property as follows:
1. King Size Bed and Bedding
2. Recliner Love Seat
3. Dining Room Table and Six Matching Chairs
4. Small Color TV and Stand
5. VCR
6. Set of Four Wooden TV Trays and Stand
8. Defendant shall be entitled to medical insurance coverage pursuant to COBRA, for the maximum period allowed by law at his own expense.
9. Each party shall be responsible for the respective debts listed on his/her financial affidavit and hold each other harmless for such debts.
10. Each party shall be responsible for his/her respective legal expenses.
Santos, J.